**Spadea Lignana**
Joel Schwartz, Esquire
222 New Road, Suite 402
Linwood, New Jersey 08221
Phone: (609) 677-9454
Facsimile: (609) 677-9455

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRUTTA BOWLS FRANCHISING, LLC : | ADVERSARY PROCEEDING |
| : | |
| Plaintiff, : | **CIVIL ACTION** |
| v. : | |
| : | No. _____ |
| NEW HEALTHY FOOD CONCEPTS, LLC, : | |
| NICHOLAS NETTA : | |
| NICHOLAS NETTA, JR. : | |
| and : | |
| JOSEPH MARANO : | |
| Defendants. : | |

### COMPLAINT

Plaintiff, Frutta Bowls Franchising, LLC ("Plaintiff" or "Frutta Bowls"), by and through its undersigned counsel, hereby sets forth this Complaint against Defendants, New Healthy Food Concepts, LLC; Nicholas Netta; Nicholas Netta, Junior; and Joseph Marano (collectively, "Defendants") as follows:

<u>The Parties</u>

1. Plaintiff Frutta Bowls is a New Jersey limited liability company with its principal place of business located at 54 Hudson Street, Freehold, New Jersey 07728.

2. Defendant New Healthy Food Concepts, LLC ("New Healthy Food") is a New Jersey limited liability company doing business at 1084 Route 22 West, Mountainside, New Jersey 07092.

3. Defendant Nicholas Netta ("Netta Sr.") is an adult individual residing in the State of New Jersey and doing business at 1084 Route 22 West, Mountainside, New Jersey 07092.

4. Defendant Nicholas Netter, Junior ("Netta Jr.") is an adult individual residing in the State of New Jersey and doing business at 1084 Route 22 West, Mountainside, New Jersey 07092.

5. Defendant Joseph Marano ("Marano") is an adult individual residing in the State of New Jersey and doing business at 1084 Route 22 West, Mountainside, New Jersey 07092.

## Jurisdiction

6. This Court has subject matter jurisdiction by virtue of Plaintiff's Trademark Infringement claim under the Lanham Act, 15 U.S.C. §§ 1051 et seq., as well as the Plaintiff's ongoing Chapter 11 Bankruptcy case.

7. Venue lies in this District pursuant to 28 U.S.C.A. § 1391, in that Plaintiff resides in this District, all Defendants reside in this District, Defendants have transacted business with Plaintiff continuously over the last several years in this District and the claims arise under a contract that was made in this District.

## The Frutta Bowls Brand

8. Plaintiff is in the business of franchising health food eateries specializing in acai-, pitaya- and kale-based bowls; fruit smoothies; other health-centric snacks and related items.

9. Since at least 2017, Plaintiff has been engaged in the business of franchising others, including Defendants, to use the mark and name "Frutta Bowls" in the operation of health

food eateries specializing in acai-, pitaya- and kale-based bowls; fruit smoothies; other health-centric snacks and related items throughout the United States.

10. Plaintiff has continually used the name "Frutta Bowls" as its identifying trademark and service mark in connection with the operation of health food eateries. Plaintiff is the owner of the following marks (the "Marks") registered on the principal register of the United States Patent and Trademark Office:

| Mark | Registration No. | Registration Date | Register |
|---|---|---|---|
| (Frutta Bowls logo) | 5184834 | April 18, 2017 | Principal |
| FRUTTA BOWL | 5463165 | May 8, 2018 | Principal |

11. The "Frutta Bowls" trademark has become universally associated with premium acai-, pitaya- and kale-based bowls; fruit smoothies; other health-centric snacks and related items. As a result, Plaintiff owns common-law trade name and trademark rights in the name "Frutta Bowls" and in the marks described above.

12. By virtue of the use and promotion and the resulting public reputation of the trade name "Frutta Bowls", there exists a secondary meaning in the name "Frutta Bowls" and the above marks.

13. Plaintiff has spent large sums of money in advertising and promoting the products sold under Plaintiff's trade name and trademarks, and today Plaintiff has a substantial business

and an established goodwill associated with the name and the above marks in connection with the products sold under its trade name and trademarks.

14. Since establishing the brand in March of 2017, Plaintiff has grown to over fifty (50) Frutta Bowls franchised units.

15. Plaintiff has a vital interest in protecting its trade name and trademarks and the preservation and protection thereof are essential to the maintenance of Plaintiff's quality health-food eateries and the goodwill and reputation associated therewith.

The Contract at Issue

16. On or about September 5, 2017, Defendant Netta Sr., on behalf of New Healthy Food, executed a Frutta Bowls franchise agreement (the "Franchise Agreement") with Plaintiff, allowing Defendant, New Healthy Food, to own and operate a Frutta Bowls franchise business in Warren, New Jersey (the "Franchised Business"). A true and correct copy of the Franchise Agreement is attached hereto and made a part hereof at Exhibit "A-1".

17. As part of the Franchise Agreement transaction, Defendants Netta Sr., Netta Jr. and Marano executed a Guaranty and Assumption of Obligations guarantying New Healthy Foods' compliance under the Franchise Agreement (the "Guaranty"). *See* Exhibit "A-2".

18. Before being allowed to operate the Franchised Business, Defendants Netta Sr., Netta Jr. and Marano were required under the Franchise Agreement to attend and successfully complete the Frutta Bowls owner's training class, wherein Defendants were provided Plaintiff's proprietary systems, information and trade secrets, as well as the operational requirements for opening and operating a successful Frutta Bowls in accordance with Plaintiff's standards. The classes were completed on January 2018.

19. Thereafter, Defendants commenced operation of the Franchised Business in accordance with the Franchise Agreement, and began to pay royalties and other fees to Plaintiff in New Jersey.

20. In addition to Defendants' pre-opening owner's training, prior to and throughout their tenure in the Frutta Bowls franchising system, Defendants were provided with Frutta Bowls' confidential operator's manual, updates, newsletters, bulletins, emails and other documents disclosing proprietary systems, information, trade secrets and operational methods for opening and operating a Frutta Bowls franchise business.

Defendants' Breach of the Franchise Agreement and Termination of the Franchise Agreement

21. In accordance with its obligations under the Franchise Agreement, since September of 2017, Plaintiff has provided assistance to Defendants at the eatery level in the areas of operational issues, brand standards, business performance, advertising, customer service, changes to operations procedures and other aspects of the franchise system. *See* Franchise Agreement at Section XIV.

22. On or about May 2018, and with increasing intensity thereafter, Defendants resisted and disregarded Plaintiff's assistance provided under the Franchise Agreement and ceased making royalty payments and others fees to Plaintiff.

23. Defendants further refused to operate in accordance with Plaintiff's operator's manual, as required by the Franchise Agreement.

24. Specifically, without Plaintiff's prior written approval, as required by the Franchise Agreement, Defendants altered the menu offerings to include:

    a. cannabidiol oil products;

    b. cereal toppings on bowls; and

   c. combination menu items at unapproved price points.

25. Defendants further refused Plaintiff's requests to:

   a. return phone calls;

   b. cooperate in scheduling Plaintiff's visits to the Franchised Business;

   c. participate in scheduled operations calls; and

   d. bring Defendants' royalties and other fees current.

26. In a letter dated August 8, 2018 (the "August 8 Letter"), Plaintiff held Defendants in default under the Franchise Agreement for their breach of various provisions of the Franchise Agreement relating to payment of royalties and other fees to Plaintiff, and requested that Defendants cure their deficiency in making such payments in full. A true and correct copy of the August 8 Letter is attached hereto and made a part hereof at Exhibit "B".

27. Ignoring Plaintiff's legal notice, Defendants continued their behavior in refusing to pay royalties and other fees to Plaintiff.

28. In a letter dated December 10, 2018 (the "December 10 Letter"), Plaintiff again held Defendants in default under the Franchise Agreement for their breach of various provisions of the Franchise Agreement relating to payment of royalties and other fees to Plaintiff, and requested that Defendants cure their deficiency in making such payments in full within ten (10) days of the December 10 Letter. A true and correct copy of the December 10 Letter is attached hereto and made a part hereof at Exhibit "C".

29. Plaintiff received a response to the December 10 Letter by way of a payment from Defendants in the amount of Five Hundred Thirty Seven Dollars and thirteen cents ($537.13).

30. Despite Defendants' payment to Plaintiff in response to the December 10 Letter, Defendants remained in default as the payment to Plaintiff did not cure Defendants' past due payments in full.

31. After Defendants failed to cure their default by bringing their account with Plaintiff current within ten (10) days of the December 10 Letter, in a letter dated January 4, 2019 (the "January 4 Letter"), Plaintiff held Defendant in default under the Franchise Agreement for their breach of various provisions of the Franchise Agreement relating to payment of royalties and other fees to Plaintiff for a third time, and held Defendant in default under the Franchise Agreement for their breach of various provisions of the Franchise Agreement relating to offering only the products and services which had prior approval by Plaintiff. A true and correct copy of the January 4 Letter is attached hereto and made a part hereof at Exhibit "D".

32. In accordance with the New Jersey Franchise Practices Act, Plaintiff provided Defendants with sixty (60) days prior written notice of its intention to terminate the Franchise Agreement unless Defendants promptly cured their defaults and complied with the terms of the Franchise Agreement. *See* Exhibit D.

33. The January 4 Letter expressly cited Defendants' post termination obligations and demanded that Defendants immediately comply with Section XVIII of the Franchise Agreement and other post-termination obligations upon the effective date of the termination. *See* Exhibit D.

34. Defendants again ignored the January 4 Letter and failed to either pay to Plaintiff all sums owing for Defendants' failure to pay royalties and other fees or remove the unapproved menu offerings from the menu at the Franchised Business.

35. The Franchise Agreement was terminated as of March 6, 2019, as a result of Defendants' failure to correct the deficiencies noted in the January 4 Letter.

36. In total disregard of the termination following the January 4 Letter, Defendants have (a) continued to operate the Franchised Business using Frutta Bowls' trade name and trademarks, (b) refused to pay any fee to Plaintiff, and (c) continued to hold themselves out to customers as "Frutta Bowls."

37. As of [May 1, 2019], the Frutta Bowls exterior sign at the Franchised Business still remains up as well as the distinctive Frutta Bowls exterior trade dress.

38. Moreover, as of [May 1, 2019], the interior of the Franchised Business continues to display Frutta Bowls marks and signature interior trade dress.

## Post Termination Obligations

39. Section XVIII.A of the Franchise Agreement provides that, upon termination of the Franchise Agreement for any reason, Defendants must comply with the following:

> Franchisee shall immediately cease to operate the Franchised Business under this Agreement and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor.

40. Section XVIII.B of the Franchise Agreement provides that, upon termination of the Franchise Agreement for any reason, Defendants must comply with the following:

> Franchisee shall immediately and permanently cease to use, by advertising or in any manner whatsoever, any confidential methods, procedures and techniques associated with the System; the Marks, any distinctive forms, slogans, signs, symbols, logos or devices associated with the System. In particular, Franchisee shall cease to use, without limitation, all signs, advertising materials, stationery, forms and other article, which display the Marks associated with the System.

41. Section XVIII.D of the Franchise Agreement provides that, upon termination of the Franchise Agreement for any reason, Defendants must comply with the following:

> Franchisee shall, in the event it continues to operate or subsequently begins to operate any other business, not use any reproduction, counterfeit, copy or colorable imitation of the Marks in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake or deception or which is likely to dilute Franchisor's exclusive rights in and to the Marks and shall not utilize any designation of origin or

description or representation which falsely suggests or represents an association or connection with Franchisor as to constitute unfair competition. Franchisee shall make such modifications or alterations to the Premises (including, without limitation, the changing of the telephone and facsimile numbers) immediately upon termination or expiration of this Agreement as may be necessary to prevent any association between Franchisor or the System and any business thereon subsequently operated by Franchisee or others, and shall make such specific additional changes thereto as Franchisor may reasonably request for that purposes, including, without limitation, the covering and/or removal of all distinctive physical and structural features identifying the System.

42. Further, Section XVI.D of the Franchise Agreement provides in pertinent part as follows:

Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable training and confidential information including, without limitation, information regarding the promotional, operation, sales and marketing methods and techniques of Franchisor and the System. Franchisee shall not, during the term of this Agreement and for a period of three (3) years after the expiration or termination of this Agreement, either directly or indirectly, of itself, or through, on behalf of or in conjunction with any person, persons, partnership or corporation, have any interest as a disclosed or beneficial owner in, or perform services as a director, officer, manager, employee, consultant, representative or agent for any Competitive Business within a fifteen (15) mile radius of any Franchisee of the Franchise. For purposes of this Section, the term "Competitive Business" shall be defined as the involvement in any health foods eatery that is involved in the manufacture or sale of acai, pitaya, kale or any other fruit.

43. Despite the termination of their franchise in accordance with the terms of the Franchise Agreement, Defendants have refused to take the actions required by Sections XVI and XVIII of the Franchise Agreement and continue to operate their competing business from the former Franchised Business location using Frutta Bowls' Confidential Information, Marks and customer goodwill, all to the great harm of Plaintiff.

## **COUNT I – TRADEMARK INFRINGEMENT**

44. Plaintiff Frutta Bowls hereby incorporates by reference, as if fully set forth, paragraphs 1 through 43 above.

45. Defendants have materially breached the terms and conditions of the Franchise Agreements, and as a result, the Franchise Agreements have been terminated thereby extinguishing any contractual right of Defendants to use Frutta Bowls' Marks.

46. Defendants have willfully and without justification failed and refused to comply with the post-termination provisions of the Franchise Agreement, which require Defendants to, among other things, discontinue all use of the Frutta Bowls trade name and trademark and to refrain from making representations which suggest or represent a present association or connection with Frutta Bowls.

47. Unless Defendants are enjoined, Plaintiff believes and therefore avers that Defendants will continue their infringing use of Plaintiff's trade name and trademarks at the former Franchised Business location.

48. Unless Defendants are enjoined, their continued improper use of the Frutta Bowls trade name and trademarks will greatly impair the value of Plaintiff's trade name and trademarks, as well as Plaintiff's reputation and goodwill.

49. Defendants' continued failure and refusal to comply with those obligations has caused and continues to cause Plaintiff irreparable harm to its reputation and goodwill, and substantial financial losses.

50. The actions and conduct of Defendants as set forth in this Complaint constitute willful trademark infringement in violation of 15 U.S.C.A. § 1125.

51. The damages that have been occasioned by the willful trademark infringement that has been engaged in by Defendants are irreparable and continuing, and Plaintiff has no adequate remedy at law.

52. Pursuant to 15 U.S.C.A. § 1116, Plaintiff is entitled to injunctive relief to protect its rights under the Lanham Act.

53. Pursuant to 15 U.S.C.A. § 1117, Plaintiff is entitled to recover Defendants' profits at the former Franchised Business location for the period since the effective date of the termination of the Franchise Agreement, during which Defendants have engaged in the above-described willful trademark infringement, plus any damages sustained by Plaintiff, which damages may be trebled, plus the costs of this action and attorneys' fees.

**COUNT II – BREACH OF FRANCHISE AGREEMENTS – SPECIFIC PERFORMANCE**

54. Plaintiff hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 53 above.

55. The Franchise Agreement provides that for a period of three (3) years following termination, Defendants shall not, directly or indirectly, engage in the health food eatery business within a radius of fifteen (15) miles of any frutta bowl location.

56. Although Defendants' Franchise Agreement has been terminated, Defendants continue to operate a health food eatery at the former Franchised Business location in violation of the covenants not-to-compete under the Franchise Agreement and in violation of Plaintiff's trademark rights as stated in Count I above.

57. By continuing to conduct a health food eatery business in violation of the covenants not-to-compete, Defendants have misappropriated the goodwill generated under the Frutta Bowls trade name.

58. Plaintiff is also entitled to specific performance of Section XVIII of the Franchise Agreement, which requires Defendants to, among other things, discontinue all use of the

Plaintiff's trade name and trademark, and refrain from any representation which suggests or represents a present association or connection with Plaintiff, the System, or the Marks.

59. Defendants' failure to honor the procedures after termination stated in the Franchise Agreement interferes with Plaintiff's ability to develop the market, retain the goodwill and re-establish the presence of the Frutta Bowls name in the market, thereby causing Plaintiff irreparable harm.

60. Plaintiff has no adequate remedy at law for damages, and unless specific performance of the procedures after termination is ordered, and injunctive relief granted, to restrain Defendant Defendants' violation of the covenants not-to-compete and other wrongful conduct, Plaintiff will continue to suffer irreparable harm.

## COUNT III – COMMON LAW UNFAIR COMPETITION

61. Plaintiff hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 60 above.

62. Defendants' conduct is in violation of the common law right against unfair competition in that they are:

   a. causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services in connection with their conduct of business at the former Franchised Business;

   b. causing likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by Plaintiff Frutta Bowls with respect to their conducting business at the former Franchised Business location; and

   c. representing to the public that the business conducted at the former Franchised Business location has Plaintiff's approval, which they do not.

63. These acts by Defendants have been committed willfully and with full knowledge of the refusal of Plaintiff to authorize the sale of goods and services at the former Franchised Business location, and with the intention of deceiving and misleading the public.

64. Defendants' unlawful trade practices will irreparably harm and injure Plaintiff's trademarks, trade name, reputation and goodwill.

65. Plaintiff is without an adequate remedy at law.

## **COUNT IV – BREACH OF FRANCHISE AGREEMENT**

66. Plaintiff hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 65 above.

67. The Franchise Agreement requires that the Defendants pay to Plaintiff a weekly royalty fee calculated at six percent (6%) of the gross revenue generated at the Franchised Business for the preceding week.

68. The Franchise Agreement also requires that the Defendants pay to Plaintiff a weekly Marketing Fee calculated at one percent (1%) of the gross revenue generated at the Franchised Business for the preceding week.

69. Pursuant to Section XVIII of the Franchise Agreement, Defendants are required to pay all sums due and owing to under the Franchise Agreement upon their termination.

70. Pursuant to Section XI.C of the Franchise Agreement, Defendants are required to pay late charge to Plaintiff at the rate of one and one half percent (1.5%) per month.

71. Defendants have accrued a debt to Plaintiff under the Franchise Agreement, which debt Defendants have failed to pay.

72. As a direct and proximate result of Defendants' breaches as described above, Plaintiff has suffered damages which total roughly $100,000 in ascertainable losses.

73. Defendants' failure to pay their account balance owed to Plaintiff under the Franchise Agreement has damaged Plaintiff.

## **COUNT V – COSTS AND ATTORNEYS' FEES**

74. Plaintiff hereby incorporates by reference, as if fully set forth, the allegations contained in paragraphs 1 through 73 above.

75. Pursuant to Section XVIII.F of the Franchise Agreement, Defendants agreed to pay all costs incurred by Plaintiff in bringing this action, including attorneys' fees.

76. Pursuant to 15 U.S.C.A. § 1117, Plaintiff is entitled to recover the costs of this action and attorneys' fees.

77. Upon the filing of this Complaint, Plaintiff has incurred a filing fee of $293 in this matter.

78. Plaintiff has incurred and continues to incur attorneys' fees in the pursuit of this action.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff requests the following relief:

A. That Defendants, their respective officers, agents, servants, employees and those persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from operating a competing business at the former Franchised Business location for three (3) years at or within fifteen (15) miles of any frutta bowl location.

B. That Defendants, their respective officers, agents, servants, employees and those persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

   i. using in any manner, including without limitation on or in any signs, stationery, letterheads, forms, printed matter or advertising, the proprietary mark "Frutta Bowls" or similar names or marks;

   ii. advertising or otherwise holding themselves out, directly or indirectly, as a current or former authorized franchisee of Frutta Bowls, or as being in any way sponsored by or connected or associated with Frutta Bowls; and

   iii. doing anything to cause potential purchasers of acai-, pitaya- or kale-based bowls or similar products to believe that any goods sold or services provided by Defendants or any business with which they are associated originate with Plaintiff or are endorsed or sponsored by Plaintiff.

 C. That Defendants be enjoined to transfer to Plaintiff, or at Plaintiff's direction terminate, each social media account or other form of electronic advertising used by Defendants in their competing business and take such steps as may be necessary or appropriate to transfer each media account or electronic site, and if they shall fail to do so, that counsel for Plaintiff be designated by the Court as their attorney-in-fact to execute such documents in their name and in their place.

 D. That Defendants be ordered to provide an accounting pursuant to 15 U.S.C.A. §1117(a), of their profits at the former Franchised Business after the effective date of the termination of the Franchise Agreement and that these profits be awarded to Plaintiff, along with all other damages arising from Defendants' violation of Plaintiff's trademark rights, trebled in accordance with 15 U.S.C.A. § 1117(a).

 E. That Defendants be ordered to file with the Court and to serve on Plaintiff within thirty (30) days after the issuance of any preliminary or permanent injunction herein, a report in

writing, under oath, setting forth in detail the measures undertaken by Defendants to comply herewith.

  F. That the Court enter a money judgment in Plaintiff's favor and against Defendants in an amount to be determined but in excess of $100,000 plus attorneys' fees and costs.

  G. That Plaintiff be awarded its reasonable attorneys' fees, costs of court and all other and further relief to which it may be entitled.

Date:  May 16, 2019          ___s/ Joel Schwartz_____
                    Joel Schwartz, Esquire
                    Attorney ID #04661195

                    Attorneys for Plaintiff
                    Spadea Lignana, LLC
                    222 New Rd, Suite 402
                    Linwood, NJ 08221
                    (215) 525-1165